1

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

3

4   **AMANDA M. RAMIREZ-ORTIZ on
behalf of her son PAPR,**

5   **Plaintiff,**                                               **CIVIL NO. 11-1475 (GAG)**

6   **v.**

7   **COMMONWEALTH OF PUERTO RICO
DEPARTMENT OF EDUCATION, et al.**

8

9   **Defendants.**

10

**OPINION AND ORDER**

11

12          Plaintiff in this matter, Amanda M. Ramirez-Ortiz, on behalf of her son PAPR ("Plaintiff"),

13   brought suit against the Commonwealth of Puerto Rico Department of Education ("DOE") and the

14   Honorable Jesus Rivera ("Rivera") (collectively referred to as "Defendants") seeking declaratory and

15   injunctive relief, as well as reimbursement and damages for alleged violations of the Individual with

16   Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq.

17          Presently before the court are Defendants' motions for summary judgment (Docket No. 74),

18   and to strike Plaintiffs' opposing statements of fact (Docket No. 87.)  For the following reasons, the

19   court **GRANTS** Defendants' summary judgment motion and **DENIES** Defendants' motion to strike.

**I.      Standard of Review**

20          Summary judgment is appropriate when "the pleadings, depositions, answers to

21   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

22   genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

23   of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a).  "An issue

24   is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it

25   'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson

26   v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

27   The moving party bears the initial burden of demonstrating the lack of evidence to support the non-

28

**Civil No. 11-1475 (GAG)**

1 moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to

2 support the nonmoving party's case. The burden then shifts to the nonmovant to establish the

3 existence of at least one fact issue which is both genuine and material." Maldonado-Denis v.

4 Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is

5 genuinely in dispute by citing particular evidence in the record or showing that either the materials

6 cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse

7 party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the

8 court finds that some genuine factual issue remains, the resolution of which could affect the outcome

9 of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477

10 U.S. 242, 248 (1986).

11       When considering a motion for summary judgment, the court must view the evidence in the

12 light most favorable to the non-moving party and give that party the benefit of any and all reasonable

13 inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make

14 credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate,

15 however, if the non-moving party's case rests merely upon "conclusory allegations, improbable

16 inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21

17 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

18 **II.    Factual & Procedural Background**

19       PPR is a child diagnosed with severe autism. The DOE is a public division organized under

20 the laws of the Commonwealth of Puerto Rico in charge of public education. Co-defendant Rivera

21 is the former Secretary of Education of the Commonwealth of Puerto Rico and was responsible for

22 the administration and implementation of all programs of education for children within the

23 Commonwealth.

24       During the 2006-2007 school year, PPR was placed at the Instituto Modelo de Ensenanza

25 Individualizada ("IMEI"). During the school year, Plaintiff met with PPR's teachers at IMEI. She

26 was informed that IMEI lacked the necessary tools to help PPR. As a result, PPR was removed from

27

28                                          2

**Civil No. 11-1475 (GAG)**

IMEI.  Plaintiff contacted the DOE to discuss different placement and related services.  The parties

were unable to reach an agreement for placement and related services, so Plaintiff filed an IDEA

complaint (Complaint No. 2007-107-031) ("First Complaint").  Following this complaint, the DOE

conducted an evaluation and prepared an Individual Education Plan ("IEP").

   On May 11, 2007, Administrative Judge Marie Lou De La Luz-Quiles produced a <u>Resolution</u>

<u>and Order</u> (the "<u>First Resolution</u>") (Docket No. 11-1), which stated in pertinent part:

   1. The Provisional Remedy is hereby granted to Student [PPR], so that he be provided psychological therapy services by Behavior Analysis, Inc. to help him in his educational program and guarantee that he receives a proper education according to his needs.
   2. The plaintiff must visit the Department of Education, 9th floor, Provisional Remedies Office, and fill in all the corresponding documents.
   3. The plaintiff must submit his psychological evaluation, along with all the required documents, to the Department of Education, 9th floor.
   4. The plaintiff must fill in the required form at the Provisional Remedies Office and be advised of the entire procedure, as explained to him during the Administrative Hearing . . . .

   The captioned parties are hereby advised that the party adversely affected by this Resolution may file a Motion for Reconsideration regarding the same within a period of twenty (20) days after this Resolution has been filed in the case docket.

On June 21, 2007, pursuant to the <u>First Resolution</u>, a signed contract between Plaintiff and Behavior

Analysis Inc. ("Behavior") was provided to Defendant.  Behavior is a Florida corporation that was

doing business in Puerto Rico and provides Applied Behavior Analysis ("ABA") therapies.

Behavior evaluated PPR and concluded that he needed an intensive program of no less than twenty

ABA sessions per week, plus weekly evaluations.

   On July 17, 2007, the DOE received the contract between Plaintiff and Behavior for the

provision of psychological services.  In response, the DOE filed an Informative Motion and Request

for Clarification of Judgment (Docket No. 32-1) on the <u>First Resolution</u>.  The DOE informed the

administrative judge that, according to the agreement, Behavior would provide  their services

through Carlos A. Vazquez.  The DOE's motion further informed the administrative court that the

documents submitted by Plaintiff did not include evidence that Mr. Vazquez was licensed to practice

psychology in Puerto Rico, which is a requirement under Puerto Rican law.  The motion further

**Civil No. 11-1475 (GAG)**

1  notified the administrative judge that the DOE sent a letter to Behavior on June 29, 2007, informing

2  it that the department could not approve the agreement.[1]  Finally, the DOE requested that the First

3  Resolution be corrected to order that the psychological services be provided through a corporation

4  or psychologist certified to practice in Puerto Rico.

5      On September 21, 2007, Administrative Judge Marie Lou De La Luz-Quiles produced a

6  second administrative resolution nunc pro tunc ("Second Resolution") (Docket No. 32-2) clarifying

7  the First Resolution ordered on May 11, 2007.  The Second Resolution stated that the therapy

8  services which were alluded to in the First Resolution are behavioral modification therapies using

9  the ABA method.  The resolution further stated that Plaintiff must submit the assessment performed

10  by Behavior and all supporting documents to the 9th floor of the DOE.  A hearing was held on

11  October 11, 2007 to clarify this matter.  At the hearing, both parties were requested to submit briefs

12  supporting their corresponding positions.  On October 24, 2007, the DOE filed a memorandum of

13  law (Docket No. 32-3) explaining its reasons for denying future and past payment of the ABA

14  services provided by Behavior.  Plaintiff never submitted a brief of her own.  PPR began receiving

15  ABA therapy from Behavior in October of 2007 at Plaintiff's expense.

16      On July 8, 2008, Administrative Judge Marie Lou De La Luz-Quiles issued a third resolution

17  nunc pro tunc ("Third Resolution") (Docket No. 32-4) in response to the DOE's submitted brief.

18  Plaintiff never received notice of the Third Resolution.[2]  The Third Resolution denied Plaintiff's

19  request for the payment of the ABA behavioral therapy and  held in pertinent part that the DOE was

20

21

22      [1] The letter also stated that DOE was denying payment for these services because Plaintiff

23  had not followed the administrative judge's order to deliver PPR's psychological assessment to the
   DOE.

24

25      [2] In her complaint, Plaintiff alleges she never received notice of the Third Resolution.  The

26  order states that it was sent by mail to the claimant (Plaintiff).  However, because the court is
   analyzing the present motion under a Rule 56 standard, it takes the pleadings in the light most

27  favorable to the non-moving party.

28                                    4

**Civil No. 11-1475 (GAG)**

1  not obligated to pay for the ABA services provided by Behavior because (a) the DOE did not agree

2  to provide psychological services through Behavior; rather, it agreed to provide psychological

3  therapy services through the provisional remedy mechanism, and (b) regardless of Plaintiff's

4  position, it was impossible for the DOE to pay for Behavior's therapy services as Carlos Vazquez,

5  the person providing the therapies, was not licensed to practice psychology in Puerto Rico.  The

6  Third Resolution provided a twenty day window in which the aggrieved party could file a motion

7  for reconsideration and a thirty day window in which to appeal the decision to the Puerto Rico Court

8  of Appeals.  No further action was taken based on the First Complaint.

9       On April 16, 2010, Plaintiff filed a new administrative complaint (Complaint No. 2010-114-

10  018) ("Second Complaint") requesting placement for PPR and reimbursement for the cost of the

11  ABA therapies for the previous years.  An agreement was reached on PPR's school placement;

12  however, no agreement was reached regarding the reimbursement of the ABA therapies.  On August

13  12, 2010, the DOE filed an informative motion (Docket No. 32-5) explaining its position regarding

14  reimbursement of the ABA therapies and requesting that the administrative judge deny the request

15  for reimbursement.  Plaintiff submitted her position on September 30, 2010.  On January 7, 2011,

16  Administrative Judge Amelia M. Cintron Velazquez issued a fourth resolution and order ("Fourth

17  Resolution") (Docket No. 32-6) stating that the administrative judge lacked jurisdiction to hear the

18  issues raised regarding the DOE's failure to comply with the resolutions issued under the First

19  Complaint.  The Fourth Resolution also ordered: (1) the payment of educational services at the

20  Colegio Pilimar for the 2010-2011 school year; (2) that the psychological evaluation, occupational,

21  educational, and speech and language therapies will be processed and issued through the DOE; and

22  (3) that the behavior modification and occupational therapies will be offered as a provisional

23  remedy.

24       On January 26, 2011, Plaintiff submitted a motion for reconsideration (Docket No. 29-1) of

25  the Fourth Resolution.  In response, Administrative Judge Amelia M. Cintron Velazquez issued a

26  fifth resolution ("Fifth Resolution") (Docket No. 11-2) on February 28, 2011 granting Plaintiff's

27

28                                            5

**Civil No. 11-1475 (GAG)**

1  motion for reconsideration.  The <u>Fifth Resolution</u> held that the administrative judge had jurisdiction

2  under IDEA to award remedies regarding the reimbursement for educational and other related

3  services of the past two years.  The administrative judge also found that the DOE was bound to pay

4  for the ABA services because it did not request an amendment to the <u>First Resolution</u> until June 17,

5  2007, which fell outside of the twenty day period to file a motion for reconsideration.  Therefore,

6  according to the administrative judge, the <u>First Resolution</u> became binding.  Administrative Judge

7  Amelia Cintron Velazquez ordered the DOE to reimburse Plaintiff the costs of the therapies

8  provided by Behavior beginning in April 16, 2008 and to continue to pay for future services until

9  such services were provided by the DOE.

10  On March 8, 2011, the DOE moved for reconsideration (Docket No. 32-7) of the

11  administrative judge's ruling in the <u>Fifth Resolution</u>.  In light of this request, the administrative

12  judge held a hearing on April 5, 2011 to determine whether or not the court had jurisdiction to enter

13  the <u>Fifth Resolution</u> requiring the DOE to comply with the <u>First Resolution</u>.  Administrative Judge

14  Amelia Cintron Velasquez issued a sixth resolution ("<u>Sixth Resolution</u>") on April 30, 2011 granting

15  the DOE's motion for reconsideration and holding that the administrative judge did not have

16  jurisdiction to order enforcement of the <u>First Resolution</u>.  The <u>Sixth Resolution</u> also ordered the

17  closing of the Second Complaint filed by Plaintiff.

18  Plaintiff filed the instant complaint (Docket No. 1) on May 20, 2011 seeking: (1) a

19  declaration that the administrative judge's <u>Sixth Resolution</u> was null and void and the DOE failed

20  to comply with IDEA's procedural requirements; (2) reimbursement of the out-of-pocket costs for

21  the ABA services; and (3) punitive and compensatory damages.

22  **III.    Discussion**

23  The court considers Defendants' motion for summary judgment (Docket No. 74) and

24  Defendants' motion to strike Plaintiffs' opposing statements of fact (Docket No. 87).

25  A. <u>IDEA</u>

26  The court **GRANTS** Defendants' motion for summary judgment.  (Docket No. 74.)  The

27

28                                                          6

**Civil No. 11-1475 (GAG)**

1    "Individuals with Disabilities Education Act (IDEA) leaves to the States the primary responsibility

2    for developing and executing educational programs for handicapped children, but imposes

3    significant requirements to be followed in the discharge of that responsibility." Schaffer v. Weast,

4    546 U.S. 49, 52 (2005). The state educational agency must establish and maintain the necessary

5    qualifications to ensure that the personnel tasked with carrying out services are appropriately and

6    adequately prepared and trained, and ensure that those personnel have the content, knowledge, and

7    skills to serve children with disabilities. 20 U.S.C. § 1412(14)(a).

8       As previously stated, in accordance with IDEA, personnel qualifications of an agency must

9    also be consistent with all state-approved or state-recognized certification, licensing, registration,

10   or other comparable requirements that apply to the professional discipline in which those personnel

11   are providing special education or related services. 20 U.S.C. § 1412(14)(a)(b). Educational

12   agencies must further ensure that related services personnel who deliver services in their disciplines

13   or profession have not had certification or licensure requirements waived on an emergency,

14   temporary, or provisional basis. 20 U.S.C. § 1412(14)(a)(b). IDEA's provisions allow agencies to

15   provide the best services and personnel for the child's well-being, as well as prevent the funding of

16   illegal operations in violation of federal and state statutes.

17       The First Resolution states that the parties stipulated to payment and reimbursement for

18   "psychological therapy services." (Docket No. 11-1 at 1.) Plaintiff, however, proffers no evidence

19   that Vazquez is a certified psychologist in Puerto Rico. This court cannot order the DOE to pay for

20   "psychological therapy services" provided by a company whose practitioner is not licensed to

21   practice psychology in Puerto Rico. P.R. LAWS ANN. tit. 20 § 3203. This offends the Act to

22   Regulate the Practice of the Profession of Psychology, which governs the field of psychology in

23   Puerto Rico. P.R. LAWS ANN. tit. 20 § 3201, et seq. Only those authorized by the Board of

24   Examiners of Psychologists can practice psychology in Puerto Rico. P.R. LAWS ANN. tit. 20 § 3203.

25   Furthermore, the unauthorized practice of psychology is a felony in this jurisdiction. P.R. LAWS

26

27

28                                      7

**Civil No. 11-1475 (GAG)**

ANN. tit. 20 § 3221.[1]   The DOE cannot be liable for reimbursing an unlicensed psychologist for the practice of psychology.

The court does not render judgment on whether behavioral modification therapy constitutes an "experimental" form of treatment falling outside the auspices of "psychological" treatment as ordered by the DOE in the First Resolution.  That is a question outside the bailiwick of this court.  Whether the DOE approves of behavioral modification therapy as a remedial measure for IDEA-qualified children and permits those certified in that particular field to engage in its practice in Puerto Rico is the Commonwealth's prerogative.  In contrast, to reiterate, the First Resolution granted reimbursement and payment for "psychological therapy services" by Behavior. (Docket No. 11-1 at 1.)  Whether Puerto Rico requires its behavioral modification therapists to be certified in psychology is within its province.   What is clear is that the administrative court granted reimbursement for "psychological therapy services."  (Id.)  Because the practice of psychology requires certification, and Vazquez lacks such certification, the DOE's position is justified.  While the court recognizes that behavior modification therapy may be effective and beneficial to thousands of children, the court simply cannot condone reimbursement for funds specifically allotted for "psychological therapy treatment" for services rendered by a therapist not licensed to provide psychological therapy treatment..

---

[1] Any person convicted of practicing the profession of psychologist illegally in violation of the provisions of this chapter shall be guilty of a felony and, upon conviction, shall be punished by a fine of not less than one thousand dollars ($1,000) or more than five thousand dollars ($5,000), or imprisonment in jail for a term of not less than one (1) month or more than two (2) years, or both penalties, [at] the discretion of the court.

By petition of the Board, the Secretary of Justice of Puerto Rico shall request an injunction to prevent the person charged with practicing psychology in the Commonwealth of Puerto Rico illegally, from continuing the practice of said profession until the charges are resolved. P.R. LAWS ANN. tit. 20 § 3221.

8

**Civil No. 11-1475 (GAG)**

1   Although the court does not impose its opinion on the benefits of behavioral modification

2   therapy, nor should it, perhaps the DOE can find a legal and ethical way by which to assist this child

3   and his family with the financial burden incurred paying for his treatment.  Plaintiff has presented

4   several strong arguments regarding the merits of behavioral modification therapy.  Indeed, the First

5   Resolution states that "due to the number of families that use its services, [Behavior] set up offices

6   for treatment and evaluation in Puerto Rico in April of 2007," and that "the Department of Education

7   agreed to the purchase of services from [Behavior] since it was established that other service

8   providings of the Department of Education had failed to meet the needs of the plaintiff and do not

9   posses [sic] the required expertise to help him."  (Docket No. 11-1.)  While the DOE claims it

10  objected to Behavior performing the remedial services, some value nonetheless seemingly exists in

11  this treatment process.  To reiterate, the court leaves it to the DOE's discretion as to how to proceed.

12  The court simply admonishes the DOE to remember its duty not to forsake the well-being of PPR.

13  Under IDEA, the DOE should both develop and execute an educational plan for children with

14  disabilities. .

15

16  At the crossroads of this litigation is the potential for detrimental impact on the health of a

17  child and the protection of the integrity of a federal assistance program implemented through a state

18  regulatory regime.  While the court's opinion today may be legally correct, it is not right from the

19  perspective of the child's best interest.  Plaintiff and the DOE have dragged one another through a

20  six-year financial and emotional swamp of confusion.  Regardless of this court's conclusion, it is

21  clear that the administrative court has neglected to efficiently resolve this matter and that the DOE

22  has failed in its charge, likely to the detriment of PPR and the taxpayers.  Lost in this trail of

23  litigation is the educational and emotional nourishment, or perhaps a lack thereof, of a severely

24  autistic child.

25      B.  Motion to Strike Plaintiff's Opposing Statements of Fact

26

27

28                                          9

**Civil No. 11-1475 (GAG)**

1    Defendant contends that Plaintiff's response in opposition to their uncontested facts failed

2  to properly identify or provide supporting documents and/or affidavits in the record and failed to

3  raise triable issues of material fact. (Docket No. 87.)  Such statements, Defendants contend, must

4  be stricken from the record.  (Docket No. 87.)

5    According to Rule 56(c)(1) of the Federal Rules of Civil Procedure, a party asserting that

6  a fact cannot be or is genuinely in dispute must support the assertion by "citing to particular parts

7  of materials in the record, including depositions, documents, electronically stored information,

8  affidavits or declarations, stipulations (including those made for purposes of the motion only),

9  admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not

10  establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c).  The court need only

11  consider the cited materials. FED. R. CIV. P. 56(c).  If a party fails to properly support or address

12  another party's assertion of fact, the court may consider the fact undisputed for purposes of the

13  motion and grant summary judgment if the motion and supporting materials show that the movant

14  is entitled to it.  FED. R. CIV. P. 56(e).

15    Pursuant to Local Rule 56, an opposing statement of material facts "shall admit, deny or

16  qualify the facts supporting the motion for summary judgment." L.Cv.R. 56(c) (D.P.R. 2009).  To

17  properly assert undisputed facts or controvert them in a statement of material facts, each statement

18  must be supported by a record citation. L.Cv.R. 56(b)(e) (D.P.R. 2009).  "An assertion of fact set

19  forth in a statement of material facts shall be followed by a citation to the specific page or paragraph

20  of identified record material supporting the assertion." L.Cv.R. 56(e) (D.P.R. 2009).  A statement

21  properly cited shall be deemed admitted unless properly controverted. L.Cv.R. 56(e) (D.P.R. 2009).

22   "The court may disregard any statement of fact not supported by a specific citation to record

23  material properly considered on summary judgment.  The court shall have no independent duty to

24  search or consider any part of the record not specifically referenced in the parties' separate statement

25  of facts." L.Cv.R. 56(e) (D.P.R. 2009).

26    Many of Plaintiff's opposing statements come close to falling short of Rule 56(c)(1) of the

27

28    10

**Civil No. 11-1475 (GAG)**

Federal Rules of Civil Procedure and Local Rule 56, including Plaintiff's responses regarding Defendants' statements numbered 4, 10, 14, 15, 16, 17, 18, 22, 23, 24, and 30.  Moreover, Plaintiff could craft her statements of uncontested facts more effectively to conform with Local Rule 56(e). Examples include numbers 8, 12, 19, and 25.  However, Plaintiff has offended neither local nor federal rules.  Accordingly, the court **DENIES** Defendants' Motion to Strike Plaintiff's opposing statements of fact.  (Docket No. 87.)

**III.    Conclusion**

For the foregoing reasons, the court **DENIES** Defendants' motion to strike (Docket No. 87) and **GRANTS** Defendants' motion for summary judgment (Docket No. 74).

**SO ORDERED.**

In San Juan, Puerto Rico this 15th day of January, 2013

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

11